**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**STACEY EVERETT**                                                                  **PLAINTIFF**

**VS.**                        **CASE NO. 3:10CV00275  HDY**

**MICHAEL J. ASTRUE, Commissioner,
    Social Security Administration**                                        **DEFENDANT**

**ORDER**

Plaintiff has appealed the final decision of the Commissioner of the Social Security Administration to deny her claim for disability insurance benefits (DIB) and supplemental security income (SSI). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g).

This Court's review function is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusions." *Id*. The Court may not reverse merely because evidence would have supported a contrary outcome. *See id*.

The only disputed issue in this case is whether plaintiff is disabled within the meaning of the Social Security Act. Plaintiff bears the burden of establishing a physical or mental impairment that will result in death, or that has lasted twelve months or more and has prevented her from engaging in any substantial gainful activity. 42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 1382c(3)(A) and (B).

Plaintiff filed for SSI and DIB on May 7, 2007. In her application she alleged she became disabled on January 1, 2000[1]. Her applications were denied initially and upon reconsideration, and she requested a hearing before an administrative law judge (ALJ).

Plaintiff was 32 years old at the time of the hearing, which was conducted on February 24, 2010. (Tr. 30-51). The plaintiff and a vocational expert testified at the hearing. The plaintiff, who has a tenth grade education, has past relevant work experience as a cafeteria attendant and office cleaner.

At the administrative hearing, the plaintiff indicated that she was married and has three children, aged 12, 7, and 3. (Tr. 35). She stated she could not work because of headaches, which started as "minor" but had increased in severity and intensity over the past ten years. (Tr. 35). She testified to quitting work in 2004 when she also experienced fatigue and muscle pain. She conceded that her headaches had improved in the past year. When asked by the ALJ why a treating physician, Dr. South, wanted to wean the plaintiff off of Lorcet, she denied having a drug problem, and explained that she did not always fill her pain prescriptions. (Tr. 37-8). The plaintiff's three year old child, along with her husband, are at home each day. (Tr. 39). The plaintiff indicated she does not have a driver's license and has a "phobia" about driving. (Tr. 41). The plaintiff testified that her headaches are a "good portion" of the reason she cannot work. She also mentioned constant soreness in her muscles. (Tr. 42). As for daily, activities, the plaintiff stated she has days where she helps with some chores. She takes Lyrica and Lexipro daily. (Tr. 43). The ALJ asked the vocational expert about the plaintiff's past work, and the witness indicated that plaintiff's past work

---

[1] The plaintiff acknowledged at the administrative hearing that she filed an earlier disability claim in 2004, and that she did not appeal its denial. (Tr. 40). As a result, the relevant period under review for disability benefits in this case is September 17, 2004 through March 22, 2010.

as a cafeteria attendant and office cleaner was light, unskilled work. (Tr. 48). The ALJ then posed a hypothetical question, asking the vocational expert to assume an individual who could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk 6 hours in a workday, sit 6 hours in a workday, only occasionally climb, balance, stoop, kneel, crouch or crawl, and limited to work where interpersonal contact is only incidental to the work performed, and any supervision required would need to be simple, direct, and concrete. (Tr. 50). The vocational expert testified that such an individual could perform the past relevant work of the plaintiff.

On March 22, 2010, the ALJ found the plaintiff was not disabled as defined in the Social Security Act. (Tr. 7-23). The ALJ specifically found the plaintiff has the severe impairments of a very small herniated nucleus pulposus at C5-C6, headaches, mood disorder, NOS, and anxiety disorder. The ALJ found, however, that she did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. The ALJ found the plaintiff has the residual functional capacity to perform her past relevant work as a cafeteria attendant and officer cleaner. As a result, the ALJ concluded that the plaintiff was not disabled. The Appeals Council, on October 25, 2010, denied plaintiff's request for review (Tr. 1-3), and plaintiff subsequently filed suit with this Court.

The ALJ considered her impairments by way of the familiar five-step sequential evaluation process.

The first step involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(b). If the claimant is, benefits are denied; if not, the evaluation goes to the next step.

Step two involves a determination, based solely on the medical evidence, of whether the

claimant has a severe impairment or combination of impairments. *Id.*, § 404.1520©); *see* 20 C.F.R. § 404.1526. If not, benefits are denied; if so, the evaluation proceeds to the next step.

Step three involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id.*, § 404.1520(d). If so, benefits are awarded; if not, the evaluation continues.

Step four involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform past work. *Id.*, § 404.1520(e). If so, benefits are denied; if not, the evaluation continues.

Step five involves a determination of whether the claimant is able to perform other substantial and gainful work within the economy, given claimant's age, education and work experience. *Id.*, § 404.1520(f). If so, benefits are denied; if not, benefits are awarded.

In support of her request for reversal, plaintiff contends the ALJ erred in the following ways: (1) in his credibility assessment; (2) in finding the plaintiff could perform a wide range of light work; (3) in underestimating the effect of plaintiff's depression and anxiety; and (4) in posing a flawed hypothetical question to the vocational expert. *Pl.'s App. Br.* at 35-40.

The plaintiff's first claim is that the ALJ erred in assessing her credibility. In his opinion, the ALJ utilized the familiar framework from *Polaski v. Heckler*, 739 F.2d 943 (8th Cir. 1984), to assess the plaintiff's credibility. Specifically, the ALJ noted that plaintiff's work record weighs against her credibility, in part because she earned more wages after her alleged onset of disability than prior to the onset date. The ALJ found the disability onset date alleged by the plaintiff to be "arbitrary." (Tr. 19). The ALJ notes that none of the plaintiff's treating or examining physicians have opined she is unable to work. This is particularly significant in this case, where the plaintiff

was seen by numerous physicians, especially during the time frame from August 2006 through 2009. The ALJ also noted that the plaintiff did not always take her prescribed medications. The Court notes that the records also show that the plaintiff failed to complete scheduled physical therapy treatments. The ALJ also discussed the plaintiff's daily activities, and found her testimony in this regard "not very convincing." (Tr. 20). One example cited by the ALJ – the plaintiff testified at the hearing that she did not drive, that her husband drove her to all of her appointments, and that she left the house about twice a month except for medical appointments (Tr. 42), while the medical records show that the plaintiff told Suzanne Gibbard, Ph.D., that she drove when examined in July of 2007. (Tr. 695-699). Considering all of the *Polaski* factors discussed by the ALJ, we find substantial evidence supports the discounting of the plaintiff's testimony. As previously noted, the absence of any physician's opinion that the plaintiff was disabled is noteworthy in this instance. There is no merit to the first claim advanced by the plaintiff.

     For her second claim, the plaintiff contends the ALJ erred in finding the plaintiff could perform a wide range of light work. To a large extent, the plaintiff's argument here is once again tied to her credibility claim. She urges that her testimony was that she could stand and/walk only for limited periods, and the ALJ should have found this testimony to be credible. Docket entry no. 12, page 38. The plaintiff also points to the medical evidence that supports her testimony regarding pain. However, the medical evidence recited by the ALJ also shows the plaintiff was noncompliant with taking her pain medication. Given our conclusion regarding the credibility finding of the ALJ, it follows that the ALJ's finding that the plaintiff could perform a wide range of light work is supported by substantial evidence. We again note that no treating physician found the plaintiff unable to perform light work, and that consultative psychologist Dr. Gibbard opined that the

5

plaintiff, despite her problems, "would have the capacity to cope with the mental cognitive work demands." (Tr. 699). There is no merit to the second argument of the plaintiff.

Plaintiff next urges that the ALJ underestimated the effect of plaintiff's depression and anxiety. The ALJ found the plaintiff had the severe impairments of a mood disorder, NOS, and anxiety disorder. (Tr. 10). As a result, the ALJ found the plaintiff capable of performing work where interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote, has few variables, requires little judgment, and any supervision required is simple, direct and concrete. (Tr. 22). The medical record as a whole shows the plaintiff primarily complains of pain occurring at various locations. The occasional reference to anxiety and depression shows the plaintiff responded well to the treatment. The ALJ did not err in estimating the plaintiff's depression and anxiety and its effect on plaintiff's ability to perform certain work.

The final argument of the plaintiff is that the ALJ erred by posing a flawed hypothetical question to the vocational expert. The plaintiff argues that the ALJ, in his hypothetical, overstated her "residual functional capacity, minimized the effect of her pain, and failed to take into effect the full effects of her mood disorder and anxiety." Docket entry no. 8, page 40. We find no merit to this claim. The ALJ's hypothetical was founded on his credibility determination, his finding that the plaintiff can perform a wide range of light work, and his assessment of the plaintiff's mood disorder and anxiety. Substantial evidence supports the individual findings of the ALJ, as well as the hypothetical question embodying these findings.

In summary, the plaintiff's arguments are without merit for the reasons stated herein. Substantial evidence supports the Commissioner's decision.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is affirmed and

plaintiff's complaint is dismissed with prejudice.

    IT IS SO ORDERED this __23__ day of September, 2011.

                                              _____
                                              UNITED STATES MAGISTRATE JUDGE